UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY ELLEN BUCKHOUT,

                              **Plaintiff,**

  vs.                                                   5:19-CV-01602
                                                                    (MAD/TWD)

NEW YORK STATE, STATE UNIVERSITY
OF NEW YORK, UPSTATE MEDICAL
UNIVERSITY,

                              **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **JAMES D. HARTT,** **ATTORNEY AT LAW** 6 North Main Street, Suite 200f Fairport, New York 14450 Attorney for Plaintiff | **JAMES D. HARTT, ESQ.** |
| **NEW YORK STATE ATTORNEY GENERAL** The Capitol Albany, New York 12224 Attorney for Defendants | **JONATHAN REINER, AAG** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     Plaintiff Mary Ellen Buckhout commenced this action on December 23, 2019, against Defendants New York State, State University of New York, and Upstate Medical University ("Upstate"), asserting discrimination claims under (1) Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"); and (2) the New York State Human Rights Law ("NYSHRL"). *See* Dkt. Nos. 1, 11. In May 2020, the parties entered into a stipulation dismissing Plaintiff's NYSHRL claims pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure. *See* Dkt.

No. 22. Currently before the Court is Defendants' motion for summary judgment on Plaintiff's Rehabilitation Act claim. *See* Dkt. No. 45. For the reasons that follow, Defendants' motion is granted.

## II. BACKGROUND

On August 29, 2013, Plaintiff began working for Upstate in the Inpatient Psychiatric Unit as a Teaching and Research Center Nurse 2. *See* Dkt. No. 45-2 at ¶¶ 1, 3. In 2016, Upstate promulgated a written job description for Teaching and Research Center Nurse 2 which classified the position as "heavy work," which was defined as "[e]xerting up to 100 pounds of force occasionally, and/or up to 50 pounds of force frequently, and/or up to 20 pounds of force constantly to move objects." Dkt. No. 45-3 at 12.[1] The written job description also stated that the position required "[l]ifting, carrying, or exerting force ... [c]ontinuously (67-100%)." *Id.* A Teaching and Research Center Nurse 2 may be unexpectedly called to assist a patient off of the floor, give direct care to a patient who has become seriously ill, apply restraints to a violent patient or visitor until security arrives, or move furniture or equipment for safety. *See* Dkt. No. 45-2 at ¶¶ 14, 17; Dkt. No. 52-2 at ¶¶ 14, 17.

On April 9, 2018, Plaintiff began a medical leave of absence. *See* Dkt. No. 45-2 at ¶¶ 2, 27. On April 13, 2018, Upstate sent Plaintiff a letter apprising her of her rights under the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA"), and informing her that, upon a request in writing, Upstate would evaluate her case and "make reasonable accommodations" for "an otherwise qualified employee with a disability." Dkt. No. 45-3 at 15. The letter also informed Plaintiff that she was required to submit the enclosed

---

[1] At the time Plaintiff applied to this position, the job description stated only that "[o]ccasional lifting" would be required. Dkt. No. 45-3 at 10.

"Certification of Health Care Provider (CHCP) for your Serious Health Condition" (the "CHCP form") completed by her healthcare provider before she could return to work. *Id.*

On May 7, 2018, Upstate received a CHCP form signed by Dr. Po Lam, M.D., indicating that Plaintiff was being treated for "[k]idney [s]tones causing hydronephrosis requiring [s]tent placement," and had surgery scheduled for May 12, 2018. *Id.* at 20. Dr. Lam indicated that Plaintiff was unable to perform any "[s]trenuous activity" or "heavy lifting," and estimated that the probable duration of that condition would be until May 28, 2018. *Id.* Upstate sent Plaintiff a letter the following day acknowledging receipt of the CHCP form and stating that, if she was "unable to return to work on 5/28/18 as the medical documentation signed on 5/4/18 indicate[d]," she would be required to submit an updated CHCP form to support her continued absence. *Id.* This letter also informed Plaintiff that

> <u>If you are cleared to return to work prior to 5/28/2018, you must submit the enclosed CHCP form prior to reporting to work.</u> Please be advised that as noted in the attached FMLA Designation Notice, we have the right to obtain an additional medical certification at our expense (e.g. return to work medical examination by a physician selected by [Upstate]) prior to your return to work.

*Id.* at 24. On May 10, 2018, Upstate received a letter from "Associated Medical Professionals" with a box checked indicating that Plaintiff could "return to WORK/SCHOOL on 05/30/2018 with ... no restrictions." *Id.* at 27. This letter was not signed by a physician.

On May 24, 2018, Upstate sent a letter to the Employee Health Service Medical Examination Center ("EHS")[2] requesting a medical examination "to determine the ability of [Plaintiff] to return to work as [a Teaching and Research Center Nurse] 2 at Upstate." Dkt. No. 45-3 at 29. On June 1, 2018, Upstate sent Plaintiff a letter informing her that she had been

---

[2] EHS is a branch of the New York State Department of Civil Service.

3

"scheduled for a medical examination to determine if [she was] fit to perform [her] duties" and that she should bring "any information from [her] personal physician that [she felt] would be helpful in reaching a decision." *Id.* at 39.  EHS performed the medical examination as requested and, on June 25, 2018, Upstate received a letter from the examining doctor stating that Plaintiff was "not able to perform the full duties of a Teaching and Research Center Nurse 2." *Id.* at 41. Although the actual examination results were not provided at the time, a full report from EHS was provided on July 30, 2018, upon Defendants' request.  *See* Dkt. No. 52-7.

Upstate sent Plaintiff a letter the next day stating that, despite her requests "to be restored to duty," Upstate was converting her to involuntary leave based on the EHS medical examination. Dkt. No. 45-3 at 43.  The letter explained that "[t]his action is taken because there is probable cause to believe that your continued presence on the job represents a potential danger to person or property or would severely interfere with operations." *Id.*  The letter covered the rights available to Plaintiff, such as the Civil Service Law Section 72 leave and appeal process, and further noted that, if Plaintiff believed "at any time during [her] leave" that she could perform the essential duties of her position with a reasonable accommodation, she should contact Upstate via phone or in writing to receive an application. *Id.* at 44.

On July 9, 2018, Plaintiff mailed a letter to Upstate objecting to the determination of unfitness and requesting a hearing. *See id.* at 46.  Ultimately, however, Plaintiff withdrew her hearing request and retired from Upstate effective December 12, 2018. *See id.* at 62.  Plaintiff never requested an accommodation from Upstate at any point prior to her retirement. *See* Dkt. No. 45-6 at 10-11.

Defendants now argue that their motion for summary judgment should be granted because "the record evidence demonstrates that [P]laintiff was not otherwise qualified" to perform the

4

essential functions of her job even with a reasonable accommodation. Dkt. No. 45-1 at 12. Plaintiff opposes the motion, arguing that "all of [the] evidence points to that fact" that she "was fit to perform the essential functions of her job." Dkt. No. 52 at 7.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson*, 477 U.S. at 255) (other citations omitted). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See Anderson*, 477 U.S. at 258.

The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See* Fed. R. Civ. P. 56(e). A

genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**B.     The Rehabilitation Act of 1973**

"Rehabilitation Act claims are governed under the familiar burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Frantti v. New York*, 850 Fed. Appx. 17, 19 (2d Cir. 2021). Thus, Plaintiff bears the initial "'burden of proving by the preponderance of the evidence a prima facie case of discrimination.'" *Id.* (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252-53 (1981)). To establish a *prima facie* case of discrimination based on an employer's failure to accommodate a disability, a plaintiff must demonstrate that

> "(1) [the plaintiff] is a person with a disability under the meaning of [the statute in question]; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."

*Natofsky v. City of New York*, 921 F.3d 337, 352 (2d Cir. 2019) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)).[3]

As noted above, Defendants argue that Plaintiff cannot establish that she could perform the essential functions of her job with a reasonable accommodation. *See* Dkt. No. 45-1 at 12. More specifically, Defendants assert that the ability to exert significant force was one of the essential functions of Plaintiff's job, and that they had no obligation to offer a reasonable accommodation that eliminates an essential function. *Id.* at 13. In opposition, Plaintiff challenges

---

[3] "Because the ADA and the Rehabilitation Act are very similar, [the Court] may 'look to caselaw interpreting one statute to assist ... in interpreting the other.'" *Hodges v. Holder*, 547 Fed. Appx. 6, 7 (2d Cir. 2013) (quoting *Francis v. City of Meriden*, 129 F.3d 281, 284 n.4 (2d Cir. 1997)).

Defendants' claim that the ability to exert significant force was an essential function and argues that, in any event, the May 10 letter from Associated Medical Professionals—which stated that Plaintiff could return to work with no restrictions—satisfied her *prima facie* burden to show that she "could perform the essential functions of the job at issue." Dkt. No. 52 at 8.

A reasonable accommodation may include, *inter alia*, job restructuring, part-time or modified work schedules, acquisition of devices to assist the performance of job duties, and, under certain circumstances, reassignment to a vacant position. *See* 42 U.S.C. § 12111(9)(B); *see also McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009). However, a reasonable accommodation may "never involve the elimination of an essential function of a job." *Shannon v. New York City Transit Auth.*, 332 F.3d 95, 101 (2d Cir. 2003) (citing *Gilbert v. Frank*, 949 F.2d 637, 642 (2d Cir. 1991)). "EEOC regulations define 'essential functions' to mean the 'fundamental' duties to be performed in the position in question, but not functions that are merely 'marginal.'" *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 120 (2d Cir. 2004) (quotation omitted). "'In approaching this inquiry, a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'" *Frantti*, 850 Fed. Appx. at 20 (quoting *Shannon*, 332 F.3d at 100). "It may also consider as evidence 'written job descriptions, the amount of time spent on the job performing the function, and the consequences of not requiring the plaintiff to perform the function.'" *Id.* (quoting *Rodal*, 369 F.3d at 120-21).

Initially, the Court finds that the ability to exert significant force was an essential function of Plaintiff's job. The written job description for Plaintiff's position described it as "heavy work" requiring "[e]xerting up to 100 pounds of force occasionally" and "[l]ifting, carrying, or exerting force ... [c]ontinuously." Dkt. No. 45-3 at 12. Furthermore, Plaintiff does not contest Rose

7

Valentino's[4] testimony that a nurse in Plaintiff's position may be unexpectedly called to apply restraints to a violent patient or visitor until security arrives, move furniture or equipment for safety, or give direct care to a patient who has become seriously ill. *See* Dkt. No. 52-2 at ¶¶ 14, 17; Dkt. No. 45-5 at ¶¶ 3, 6. As Valentino testified, having a nurse "on a psychiatric unit who cannot meet the physical demands of the job creates a serious safety issue for the nurse, [their] colleagues, and patients." Dkt. No. 45-5 at ¶ 9. In reply, Plaintiff asserts that there "were no fewer than 5 slightly built nurses on the Psychiatric Unit," one of whom "was pregnant during the time period at issue" and another whom had "herniated disks." Dkt. No. 52-1 at ¶ 1. In support of that claim, Plaintiff cites only her own affidavit, which does not actually identify any of these alleged individuals or provide any evidence supporting her claim that they could not exert the amount of force required by Defendants. *See* Dkt. No. 52-4 at ¶ 18. Plaintiff's unsupported speculation about unidentified employees is insufficient to create a triable issue of fact. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated"). Accordingly, the Court finds that Defendants have established that the ability to exert significant force was one of the essential functions of Plaintiff's job and, therefore, that Defendants had no duty to offer a reasonable accommodation eliminating this requirement.

      Plaintiff also fails to establish a triable issue of fact as to whether she could perform the essential functions of her job. The only medical evidence that Plaintiff submits in support of her claim is (1) the unsworn and unsigned May 10 letter from Associated Medical Professionals which asserts, without elaboration, that Plaintiff could return to "WORK/SCHOOL" on May 30

---

[4] The Deputy Director of Psychiatric Inpatient Nursing Services at Upstate.

with "no restrictions," Dkt. No. 45-3 at 27; and (2) an unsworn letter from Dr. Lam describing the "timeline of her office visit and subsequent hospitalization" and stating that, on May 30, Plaintiff was "released back to work with no restrictions," Dkt. No. 52-6 at 2.  Initially, these letters—insofar as they are offered to prove the truth of the assertions made therein—are inadmissible hearsay.  *See Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005) ("As a general matter, ... unsworn letters from physicians generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment").[5]  Even if these letters were admissible, they are insufficient to create a triable issue of fact.  The May 10 letter is not signed by any physician and baldly asserts, without support or explanation, that Plaintiff could return to work without restrictions.  The September 20 letter is signed by Dr. Lam, but does not provide any explanation for how the determination that Plaintiff could return to work without restrictions was reached, or even state who made that determination.[6]  Summary judgment cannot be defeated by relying on such conclusory allegations.

Plaintiff has therefore failed to establish a triable issue of fact as to whether she could perform the essential functions of her job with a reasonable accommodation, a necessary element of her *prima facie* case.  Accordingly, Defendants' motion for summary judgment is granted.

### IV. CONCLUSION

---

[5] The Court notes that, in *Capobianco*, the Second Circuit held that the district court abused its discretion when it *sua sponte* excluded two unsworn medical expert letters offered by the plaintiff where (1) the defendants had offered and "relied on" the letters in their moving papers and, (2) the plaintiff was without notice of any issue as to their admissibility because neither side had objected to the admissibility of the reports.  *Capobianco* 422 F.3d at 55.  This case is distinguishable from *Capobianco*.  Here, although Defendants offered the May 10 letter in their moving papers, they do not *rely* on that letter in their motion and clearly object to its admissibility.

[6] Indeed, the only competent medical evidence in the record indicates that Plaintiff was *not* fit to return to work without restrictions.  *See* Dkt. No. 52-7.

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 45) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 16, 2022
       Albany, New York

Mae A. D'Agostino
U.S. District Judge